486 So.2d 559 (1986)
DANIEL MONES, P.A., Petitioner,
v.
Jeffrey SMITH and First Impression Industries, Inc., Respondents.
No. 66296.
Supreme Court of Florida.
March 20, 1986.
Rehearing Denied May 6, 1986.
*560 Thomas M. Ervin, Jr. of Ervin, Varn, Jacobs, Odom and Kitchen, Tallahassee, for petitioner.
Robert J. Levine of Toland and Levine, Miami, for respondents.
McDONALD, Justice.
We have for review Smith v. Daniel Mones, P.A., 458 So.2d 796 (Fla. 3d DCA 1984), which expressly and directly conflicts with Dowda & Fields, P.A. v. Cobb, 452 So.2d 1140 (Fla. 5th DCA 1984), and Conroy v. Conroy, 392 So.2d 934 (Fla. 2d DCA 1980), review denied, 399 So.2d 1141 (Fla. 1981). This Court has jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution. The issue here is whether the attorney acquired a valid lien on his client's settlement proceeds, thereby allowing him to retain the funds until a dispute over fees is settled. We hold that Mones may claim a retaining lien.
This is an action filed by an attorney, Daniel Mones, P.A., to collect fees which his former clients, Jeffery Smith and First Impression Industries, Inc. (clients), allegedly owe to him. According to the pleadings, Mones had represented the clients in several legal matters prior to this suit. The last such matter was a mechanics lien action which was settled for approximately $37,000.00. Of that amount, Mones immediately disbursed $15,000.00 to the clients. Mones deposited the remaining $22,000.00 of the settlement proceeds into an attorney's trust account.[*] Afterward, Mones presented to the clients a claim for attorney's fees amounting to $14,400.00 on the mechanics lien action (forty percent contingency claim) and approximately $30,000.00 for services rendered in prior matters. Even though the clients fiercely disputed these charges, Mones transferred the balance of the settlement proceeds from the trust fund to his personal account. The clients demanded that Mones immediately disburse the proceeds to them, but Mones refused and filed this suit. In response to the clients' motion for immediate disbursement of the proceeds, Mones contended he could hold the funds pending final resolution of the fee dispute because he held both a retaining lien and a charging lien on the *561 funds. The trial court ruled in favor of Mones, finding both liens present.
The third district reversed on interlocutory appeal, ruling against the existence of either lien. According to the district court, Mones had not perfected a charging lien because he had neither filed a notice of lien nor pursued the charging lien in the original mechanics lien action. The district court further denied Mones a retaining lien, ruling that setoffs for past legal services rendered in unrelated cases could not be imposed on an attorney's trust account.
Additionally, the district court ordered Mones to transfer the settlement proceeds to the clients immediately. Instead, Mones transferred the funds to the court registry. After both the district court and the trial court refused to stay the transfer order, this Court granted Mones an emergency stay of all proceedings below pending further order from this Court.
Both retaining liens and charging liens arose under common law. Maryland Casualty Co. v. Westinghouse Credit Corp. (In re Hanson Dredging, Inc.), 15 B.R. 79 (S.D.Fla. 1981). See Nichols v. Kroelinger, 46 So.2d 722 (Fla. 1950). No statutes outline the requirements for valid attorney's liens in Florida. Rather, case law acts as the sole guide for both attorneys and courts as to these liens. Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383 (Fla. 1983); St. Ana v. Wheeler Mattison Drugs, Inc., 129 So.2d 184 (Fla. 3d DCA), cert. denied, 133 So.2d 646 (Fla. 1961). In Sinclair, Louis, 428 So.2d at 1385, this Court set out four requirements for a valid charging lien. To impose such a lien, the attorney must show: (1) an express or implied contract between attorney and client; (2) an express or implied understanding for payment of attorney's fees out of the recovery; (3) either an avoidance of payment or a dispute as to the amount of fees; and (4) timely notice. In the case at bar the district court determined that Mones did not give timely notice of his charging lien claim. We agree.
In order to give timely notice of a charging lien an attorney should either file a notice of lien or otherwise pursue the lien in the original action. Sinclair, Louis, 428 So.2d at 1385; Dowda & Fields, P.A. v. Cobb, 452 So.2d 1140 (Fla. 5th DCA 1984). See Rosenkrantz v. Hall, 161 So.2d 673 (Fla. 3d DCA 1964); Pasin v. Kroo, 412 So.2d 43 (Fla. 3d DCA 1982); Fickle v. Adkins, 385 So.2d 1141 (Fla. 3d DCA 1980). A summary proceeding in the original action represents the preferred method of enforcing an attorney's charging lien in Florida. Sinclair, Louis, 428 So.2d at 1385; Dowda, 452 So.2d at 1143. While such a proceeding is not the exclusive mechanism for enforcing a charging lien, Mones was obligated to notify his clients in some way before the close of the original proceeding that he intended to pursue the charging lien. Simply filing suit gave his former clients insufficient notice. Therefore, no valid charging lien can be imposed on the settlement proceeds in the case at bar.
Turning now to the district court's denial of a retaining lien, we find the court erred in ruling that trust accounts are not subject to setoffs for past legal services rendered in unrelated cases. In Florida an attorney has a right to a retaining lien upon all of the client's property in the attorney's possession, including money collected for the client. E.g., Dowda, 452 So.2d at 1142. Unlike a charging lien, a retaining lien covers the balance due for all legal work done on behalf of the client regardless of whether the property is related to the matter for which the money is owed to the attorney. Conroy v. Conroy, 392 So.2d 934 (Fla. 2d DCA 1980), review denied, 399 So.2d 1141 (Fla. 1981).
The district court interpreted our decision in The Florida Bar v. Bratton, 413 So.2d 754 (Fla. 1982), as authority for the proposition that attorney's trust accounts are not subject to setoffs for past legal services rendered in unrelated cases. Such an interpretation of Bratton is unwarranted. In Bratton we ruled that an attorney cannot impose a valid retaining lien on *562 client's funds entrusted to the attorney for a specific purpose where the parties have not agreed that fees should be paid out of the entrusted funds. In the case at bar the funds were not held for a specific purpose and, accordingly, Bratton is inapplicable.
The district court's reliance on Florida Bar Integration Rule, article XI, rule 11.02(4) is also unjustified. Rule 11.02(4) expressly provides that it does not "preclude the retention of money or other property upon which the lawyer has a valid lien for his services or ... preclude the payment of agreed fees from the proceeds of transactions or collections." This rule permits retaining liens on trust funds where otherwise valid. Accordingly, Mones is entitled to a retaining lien for the full balance of all fees still owed him up to the balance which remained in the trust account prior to its transfer to the court registry.
Therefore, we approve that portion of the district court's decision relating to the charging lien and quash that portion relating to the retaining lien. We further quash the order instructing the trial court to order the surrender of the proceeds to the clients and instruct that the registry retain the funds pending the final outcome of the fee dispute. The stay order is vacated.
It is so ordered.
ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., concurs in part and dissents in part with an opinion.
BOYD, Chief Justice, concurring in part and dissenting in part.
I concur in the Court's conclusion that petitioner did not have a charging lien on the proceeds of the settlement for his fees for services provided in obtaining the settlement. I dissent to that portion of the Court's decision that holds that the lawyer had a retaining lien on the funds to secure payment of fees owed including those said to be owed for legal services previously performed in entirely separate matters.
This interlocutory appeal on the issue of whether the lawyer could retain funds of the client pending resolution of the lawyer's legal action for payment of fees went before the district court without any appeal record. The legal questions presented, however, turn on issues of fact and the parties vigorously dispute the facts. It is impossible for us to evaluate the contradictory assertions of fact by the normal method of reference to the trial record because no trial record has as yet been developed. Yet these factual issues are relevant not only to the question of entitlement to attorney's fees but also to the lawyer's asserted right to retain funds received on behalf of the client.
I agree that there was no charging lien on the settlement proceeds because after settlement and dismissal of the litigation there was no judgment, fund, or res, within the control of the court, to which the lien could attach. See, e.g., Gay v. McCaughan, 105 So.2d 771 (Fla. 1958); Dowda and Fields, P.A. v. Cobb, 452 So.2d 1140 (Fla. 5th DCA 1984). The charging lien does not simply exist by operation of law but depends on some action of the court. There have been cases where this Court has approved imposition of equitable lawyer's liens on real and personal property after termination of the proceedings in which the fund or property was recovered, but all such cases showed special equitable circumstances. See, e.g., Forman v. Kennedy, 156 Fla. 219, 22 So.2d 890 (1945); Ward v. Forde, 154 Fla. 383, 17 So.2d 691 (1944), receded from to extent of inconsistency, Billingham v. Thiele, 109 So.2d 763 (Fla. 1959); Knabb v. Mabry, 137 Fla. 530, 188 So. 586 (1939); Scott v. Kirtley, 113 Fla. 637, 152 So. 721 (1933); Alyea v. Hampton, 112 Fla. 61, 150 So. 242 (1933).
The majority opinion makes brief reference to the fact that the lawyer asserts a claim to a forty percent contingent fee to be taken from the recovery obtained in the lien foreclosure action. The respondents deny the existence of any contractual agreement for a percentage-based contingent *563 fee. Where there is a clear contractual understanding that the lawyer shall be paid a fee based on a percent of the recovery and that the fee is to be paid from the recovery, and the lawyer receives the proceeds of the recovery on behalf of the client, the lawyer may simply retain that portion to which he is entitled. Such an action by a lawyer does not depend on the recognition by the court of a charging lien. It does depend, however, on the existence of a clear agreement both for the payment of a fee and for the lawyer's taking the fee directly from the proceeds of the recovery. Conscientious lawyers know how to structure their arrangements so that such an action will withstand a legal attack by a client. See Billingham v. Thiele, 109 So.2d 763, 764 (Fla. 1959) (In declining to impress real property with a lien for legal services, Court observed that "a lawyer, above all others, should be equipped to protect himself in such matters.").
The majority opinion grounds its holding on the charging lien issue primarily on the lack of notice prior to the termination of the court proceeding. It should be noted, however, that where there is a clear employment contract providing for a fee drawn from the recovery, the client already has notice that the lawyer intends to retain a portion of the recovery as his fee. In the charging lien context, the notice requirement is primarily for the benefit of third parties who may have occasion to be affected by the judgment to which the lien attaches. See Randall v. Archer, 5 Fla. 438 (1854); Dowda and Fields, P.A. v. Cobb.
In the present case, according to respondent's version of the facts, there is an even more compelling reason to deny a charging lien than the lack of notice before termination of the court proceeding. Even if the lawyer had filed of record a claim of lien on the settlement proceeds, before the dismissal with prejudice but after the client's acceptance of the settlement offer, respondent says that it would have been inequitable to impose a lien because of the lack of disclosure to the client at the time of the settlement. Respondent invokes the maxim that he who seeks equity must do equity and asserts that the settlement offer would not have been accepted if the client had known the extent of the lawyer's claim and his intention to retain the lion's share of the funds for current and past-due fees. This assertion demonstrates the extent to which entitlement to the claimed fee and entitlement to the remedies of charging lien and retaining lien are intertwined in this case.
The present case is an action at law for the payment of fees for legal services. A charging lien is an equitable remedy by which an attorney can have his fee for services rendered in connection with litigation secured to him in the judgment awarded to his client. Gay v. McCaughan, 105 So.2d 771 (Fla. 1958); In re Barker's Estate, 75 So.2d 303 (Fla. 1954); Nichols v. Kroelinger, 46 So.2d 722 (Fla. 1950); In re Warner's Estate, 160 Fla. 460, 35 So.2d 296 (1948); Dowda and Fields, P.A. v. Cobb, 452 So.2d 1140 (Fla. 5th DCA 1984). Where the entitlement to receive a fee and that it should be paid out of the client's recovery are clearly shown to the court, this equitable device avoids the possibility that the lawyer will have to resort to an action at law to recover the fee. See, e.g., In re Barker's Estate. In this connection, it has been said that "proceedings at law between attorney and client have long been disfavored." Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So.2d 1383, 1385 (Fla. 1983). However, when the proceedings in which the legal services were provided have been finally terminated without the attorney having established his entitlement to a charging lien, it is generally too late for him to resort to this equitable remedy. This Court has on occasion denied attorneys' attempts to establish charging liens collaterally, on the ground that "an adequate remedy" is available by means of an action at law to establish entitlement to a fee in "adversary proceedings." Gay v. McCaughan, 105 So.2d at 773; Smith v. Tydings, 100 Fla. 1414, 1415, 131 So. 319, 320 (1930). Except where the charging lien is established in the proceeding in which *564 the services were rendered, an attorney is no more entitled to have a lien impressed summarily by decree of a court of equity than is any other kind of laborer. Brass v. Reed, 64 So.2d 646, 648 (Fla. 1953). By the same token, an attorney is no less entitled to finally resort to an action at law to recover money owed than any other kind of claimant or creditor. But when he does so, arguments about entitlement to a "charging lien" on settlement proceeds seem somewhat out of place when the real questions are whether money is owed, and how much, and whether the attorney can retain settlement proceeds pending determination of the other questions.
Turning now to the question of the retaining lien, I dissent to the Court's holding that petitioner was entitled to withhold from the client any part of the settlement proceeds in excess of a fee clearly agreed upon and agreed to be paid from those proceeds for legal services provided in connection with the litigation in which the recovery by settlement was obtained. Although The Florida Bar v. Bratton, 413 So.2d 754 (Fla. 1982), is factually distinguishable, I find that the distinction is without a substantial difference. There it was held that the attorney could not ethically apply the client's money to the payment of past-due fees when the client had entrusted the money to the attorney for a specific purpose. In accepting the money, the attorney had at least impliedly agreed to apply the entrusted funds to the purpose contemplated by the client. Here, the settlement proceeds came into the attorney's hands from the client's debtor rather than from the client. But if, as the respondent asserts, the lawyer was allowed to receive the funds into his trust account for purposes desired by the client, i.e., subsequent disbursement to the client on demand, then the same principle applied in Bratton should apply here.
Article XI, Rule 11.02(4), of the Integration Rule, as the Court points out, does not forbid "the retention of money or other property upon which the lawyer has a valid lien for his services or ... the payment of agreed fees from the proceeds of transactions or collections." The attorney in the Bratton disciplinary case could just as reasonably rely upon and invoke as can the attorney here the common-law right to a retaining lien and the Integration Rule's proviso that retention of a client's property under a "valid lien for his services" is not forbidden to a lawyer. Again, if the client had known at the time of the settlement offer that the lawyer intended to retain part of the settlement as satisfaction of his claim for past-due fees for services in unrelated matters, the client might have conducted the matter differently. Under respondent's version of the facts, the lawyer was in a position fraught with potential conflict of interest at the moment when the client's debtor made the settlement offer.
The right of an attorney to retain the "papers, money, securities and other property," Dowda & Fields, 452 So.2d at 1142, in the lawyer's possession, is not unlimited. If the attorney retains funds in excess of what he is subsequently determined to be entitled to, he may be liable for a wrongful conversion. See Adams, George, Lee, Schulte & Ward, P.A., v. Westinghouse Electric Corp., 597 F.2d 570 (5th Cir.1979). Moreover, the use of the retaining lien to "embarrass the client" into paying the fee demanded, Cooper v. McNair, 49 F.2d 778 (S.D.Fla. 1931), may be unethical where the property being held is money that the client needs and the fee claim is uncertain or disputed.
By ordering that the retained funds in question here remain in the registry of the court pending the outcome of the lawsuit, the Court does not explicitly rule on the question of whether the attorney's retention of all of the money was proper. I would hold that the attorney could retain funds amounting to his claim for a fee for services rendered in the litigation that resulted in the settlement, but could not retain from the settlement proceeds any funds based on claims for fees already owed for previous and separate legal services.
NOTES
[*] Mones maintains that $1,000 of the settlement proceeds was refunded to payers pursuant to the contract for settlement, leaving only $21,000 in the trust account and $36,000 as the total recovery.